**THE SHUMAN LAW FIRM**
Kip B. Shuman, Esq., Bar # 145842
1 Montgomery Street, #1800
San Francisco, CA 94104
(866) 569-4531

*Attorneys for Plaintiff*

*[Additional counsel on signature page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL PARSHALL, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF NAPA, N.A., MALCOLM A. MACKENZIE, DICK ANDERSON, STEVE BARLOW, GREG BENNETT, JEFF GERLOMES, KATHLEEN LUCIER, STEPHEN ORNDORF, KELLY SOLOMON, ANTHONY TORRES, BANK OF MARIN BANCORP, and BANK OF MARIN,<br><br>Defendants. | Case No. _____<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>JURY TRIAL DEMANDED |

Plaintiff, by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief based upon, among other things, the investigation of counsel as to all other allegations herein, as follows:

## SUMMARY OF THE ACTION

1.  This action stems from a proposed transaction announced on July 31, 2017 (the "Proposed Transaction"), pursuant to which Bank of Napa, N.A. ("Napa" or the "Company") will be acquired by Bank of Marin Bancorp ("Parent") and its wholly-owned bank subsidiary, Bank of Marin ("Bank," and together with Parent, "Marin").

2.  On July 31, 2017, the Board caused Napa to enter into an agreement to merge and plan of reorganization (the "Merger Agreement"). Pursuant to the terms of the Merger

1
COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Agreement, if Napa shareholders approve the Proposed Transaction at the November 7, 2017 stockholder meeting, Napa will merge with and into Bank and Napa stockholders will be entitled to receive, in exchange for each share of Napa common stock, 0.307 shares of Parent common stock.

3. On September 15, 2017, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Napa common stock.

9. Defendant Napa is a national banking association organized under the laws of the

2
COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

United States with its headquarters located at 2007 Redwood Rd., Suite 101, Napa, California 94558. Napa's common stock is traded on the OTC Bulletin Board under the ticker symbol "BNNP."

10. Defendant Malcolm A. Mackenzie ("Mackenzie") is a director and Chairman of the Board of Napa.

11. Defendant Dick Anderson ("Anderson") is a director of Napa.

12. Defendant Steve Barlow ("Barlow") is a director of Napa.

13. Defendant Greg Bennett ("Bennett") is a director of Napa.

14. Defendant Jeff Gerlomes ("Gerlomes") is a director of Napa.

15. Defendant Kathleen Lucier ("Lucier") is a director of Napa.

16. Defendant Stephen Orndorf ("Orndorf") is a director of Napa.

17. Defendant Kelly Solomon ("Solomon") is a director of Napa.

18. Defendant Anthony Torres ("Torres") is a director of Napa.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

20. Defendant Parent is a bank holding company organized under the laws of the State of California with its principal executive offices located at 504 Redwood Blvd., Suite 100, Novato, California 94957.

21. Defendant Bank is a California state bank organized under the laws of the State of California.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Napa (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23. This action is properly maintainable as a class action.

24. The Class is so numerous that joinder of all members is impracticable. As of September 20, 2017, there were 2,394,669 shares of Napa common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

25. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

28. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

**A.     Background of the Company and the Proposed Transaction**

29. Napa is a national bank that engages in commercial banking primarily in Napa County, California. Napa operates through its main branch and headquarters located in Napa, California. The Company was organized on December 1, 2005 and commenced operations on

August 14, 2006.

30. Napa offers a range of loan and deposit products and services to businesses and consumers in the Napa Valley. The Company's business banking focus is on small to medium sized businesses, professionals, and not-for-profit organizations. Napa offers a broad range of commercial and retail lending programs designed to meet the needs of its target markets. These include commercial loans and lines of credit, construction financing, consumer loans, auto loans, home improvement loans and home equity lines of credit. Napa offers a proprietary Visa credit card combined with a rewards program to its customers, which includes a Business Visa program for business and professional customers.

31. Napa also offers a variety of checking and savings accounts, and a number of time deposit alternatives, including interest bearing and non-interest bearing personal and business checking accounts and time certificates of deposit. Napa also offers direct deposit of payroll, social security and pension checks. The Company offers its depositors 24-hour access to their accounts by telephone and to both consumer and business accounts through its internet banking services.

32. As of June 30, 2017, Napa's total deposits were $217.7 million, its gross loans were $139.3 million, and its total assets were $246.1 million. At June 30, 2017, Napa had equity capital of $27.2 million.

***The Registration Statement Omits Material Information, Rendering It False and Misleading***

33. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

34. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

35. First, the Registration Statement omits material information regarding the Company's financial projections, Marin's financial projections, and the analyses performed by

the Company's financial advisor, Sandler O'Neill & Partners, L.P. ("Sandler").

36.     The Registration Statement fails to disclose *any* financial projections of Napa, Parent, or the pro forma combined company, despite the fact that these projections were used by Sandler in its valuation analyses to support its opinion that the merger consideration is fair to Napa's stockholders.  The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

37.     In particular, in connection with Sandler's Napa Net Present Value Analyses, Sandler used Napa's "internal net income and dividends per share projections for Napa for the year ending December 31, 2017, as provided by the senior management of Napa, as well as an estimated long-term earnings per share growth rate and dividends per share for the years thereafter, as provided by the senior management of Napa," and to approximate the terminal value of Napa, Sandler applied certain multiples to Napa's 2021 projections of earnings per share and tangible book value per share.  The Registration Statement, however, fails to disclose any of the projections of Napa used by Sandler, including its projections of net income, dividends per share, earnings per share, and tangible book value per share.

38.     Similarly, in connection with Sandler's Marin Net Present Value Analyses, Sandler used "consensus mean analyst earnings per share estimates for the years ending December 31, 2017 and December 31, 2018, as well as an estimated long-term annual earnings per share growth rate and dividend payout ratio for Marin for the years thereafter, as provided by the senior management of Marin," and to approximate the terminal value of Marin, Sandler applied certain multiples to Marin's 2021 projections of earnings per share and tangible book value per share.  The Registration Statement, however, fails to disclose any of the projections of Marin used by Sandler, including its projections of net income, dividends per share, earnings per

share, and tangible book value per share.

39. Additionally, in connection with Sandler's Pro Forma Merger Analysis, Sandler relied upon: "certain internal financial projections for Napa for the years ending December 31, 2017 through December 31, 2021, as provided by the senior management of Napa and adjusted by the senior management of Marin;" "publicly available consensus mean analyst earnings per share estimates for Marin for the years ending December 31, 2017 and December 31, 2018, as well as an estimated long-term annual earnings per share growth rate for Marin for the years thereafter, as provided by the senior management of Marin;" and "certain assumptions relating to transaction expenses, purchase accounting adjustments, and cost savings, as provided by the senior management of Marin." The Registration Statement fails to disclose any of these projections and assumptions that were relied upon by Sandler in its analysis.

40. The Registration Statement also fails to disclose material information relating to Sandler's valuation analyses that Sandler and the Board relied upon in approving the Proposed Transaction. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

41. With respect to Sandler's Napa Net Present Value Analyses, the Registration Statement fails to disclose: (i) the internal net income and dividends per share projections for Napa for the year ending December 31, 2017, as provided by the senior management of Napa; (ii) the estimated long-term earnings per share growth rate and dividends per share that Sandler used for the years after 2017; (iii) the projections of Napa's earnings per share and tangible book value per share through year 2021; (iv) the inputs and assumptions underlying the discount rate ranges selected by Sandler in its analyses; and (iii) the perpetuity growth rate ranges implied by Sandler's analyses.

42. With respect to Sandler's Marin Net Present Value Analyses, the Registration

Statement fails to disclose: (i) the consensus mean analyst earnings per share estimates for the years ending December 31, 2017 and December 31, 2018; (ii) the estimated long-term annual earnings per share growth rate and dividend payout ratio that Sandler used for the years after 2018; (iii) the projections of Marin's earnings per share and tangible book value per share through year 2021; (iv) the inputs and assumptions underlying the discount rate ranges selected by Sandler in its analyses; and (iii) the perpetuity growth rate ranges implied by Sandler's analyses.

43. With respect to Sandler's Comparable Company Analyses of Napa and Marin, the Registration Statement fails to disclose the individual multiples and financial metrics for each of the companies observed by Sandler in its analyses.

44. With respect to Sandler's Analysis of Selected Merger Transactions, the Registration Statement fails to disclose the individual multiples and financial metrics for each of the transactions observed by Sandler in its analysis.

45. With respect to Sandler's Pro Forma Merger Analysis, the Registration Statement fails to disclose: (i) the internal financial projections for Napa for the years ending December 31, 2017 through December 31, 2021, as provided by the senior management of Napa and adjusted by the senior management of Marin; (ii) the consensus mean analyst earnings per share estimates for Marin for the years ending December 31, 2017 and December 31, 2018; (iii) the estimated long-term annual earnings per share growth rate that Sandler used for the years after 2018; (iv) the assumptions relating to transaction expenses, purchase accounting adjustments, and cost savings, as provided by the senior management of Marin; and (v) the actual amount of accretion and dilution to Marin's earnings per share and estimated tangible book value, respectively.

46. The omission of this material information renders the "Opinion of Napa's Financial Advisor" section of the Registration Statement false and misleading.

47. Second, the Registration Statement omits material information relating to

potential conflicts of interest of Sandler. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

48. Specifically, the Registration Statement states that: "Sandler acted as Napa's financial advisor in connection with the merger and will receive a fee for its services in an amount equal to 1.50% of the aggregate purchase price, which fee at the time of announcement was approximately $765,244. Sandler's transaction fee is contingent upon consummation of the merger. Sandler also received a fee for rendering its opinion, which fairness opinion fee will be credited in full towards the fee becoming due and payable to Sandler on the day of closing of the merger." The Registration Statement fails to disclose the amount of the fee that Sandler already earned for rendering its opinion to the Board. This information is important, because if the fee earned by Sandler for providing a fairness opinion is minimal compared to the fee to be earned upon the successful completion of the Proposed Transaction, stockholders could assess for themselves whether Sandler had a potential motive to ensure that the Proposed Transaction is successfully completed by rendering a favorable fairness opinion.

49. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Opinion of Napa's Financial Advisor;" and (ii) "Background of the Merger."

50. Third, the Registration Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

51. The Registration Statement discloses that, in connection with the Proposed Transaction, Napa's President and CEO, Individual Defendant LeMasters, entered into a consulting agreement with Marin, and that Napa's Executive Vice President and Bank Sales Manager, Diane Bishofberger, entered into an employment agreement with Marin, pursuant to which they will provide services to Marin following the close of the Proposed Transaction.

1  Although the Registration Statement generally indicates that Marin proposed potential post-merger consulting and employment opportunities on May 25 and June 7, 2017, respectively, the Registration Statement fails to (but must) disclose the timing and nature of all communications regarding these consulting and employment agreements, including who first proposed the agreements and who participated in all such communications.

52. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

53. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Interests of Certain Napa Officers and Directors in the Merger;" and (ii) "Background of the Merger."

54. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Napa's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Napa**

55. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

56. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Napa is liable as the issuer of these statements.

57. The Registration Statement was prepared, reviewed, and/or disseminated by the

Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

58. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

59. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

60. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

61. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

62. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act
Against the Individual Defendants and Marin**

63. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64. The Individual Defendants and Marin acted as controlling persons of Napa within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Napa and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the

various statements that plaintiff contends are false and misleading.

65. Each of the Individual Defendants and Marin was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

66. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Registration Statement.

67. Marin also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

68. By virtue of the foregoing, the Individual Defendants and Marin violated Section 20(a) of the 1934 Act.

69. As set forth above, the Individual Defendants and Marin had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

    A.    Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

    B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

    C.    Directing the Individual Defendants to file a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

    D.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

    E.    Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

    F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: October 6, 2017            **THE SHUMAN LAW FIRM**

By: */s/ KIP B SHUMAN*
Kip B. Shuman
1 Montgomery Street, #1800
San Francisco, CA 94104
(866) 569-4531

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800

## CERTIFICATION OF PLAINTIFF

I, Paul Parshall ("Plaintiff"), hereby declare as to the claims asserted under the federal securities laws that:

1. Plaintiff has reviewed the complaint and authorizes its filing.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, and I will testify at deposition or trial, if necessary. I understand that this is not a claim form and that I do not need to execute this Certification to share in any recovery as a member of the class.

4. Plaintiff's purchase and sale transactions in the Bank of Napa, N.A. (OTC: BNNP) security that is the subject of this action during the class period is/are as follows:

**PURCHASES**

| Buy Date | Shares | Price per Share |
|---|---|---|
| 11/21/16 | 70 | $11.50 |
| | | |
| | | |
| | | |

**SALES**

| Sell Date | Shares | Price per Share |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

*Please list additional transactions on separate sheet of paper, if necessary.*

5. Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6. During the three years prior to the date of this Certification, Plaintiff has not moved to serve as a representative party for a class in an action filed under the federal securities laws.

7. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this \_\_ day of September, 2017.

_____
PAUL PARSHALL